THE STATE OF OHIO, APPELLANT, *v.* SNIEZEK, APPELLEE.

(No. 44284—Decided November 18, 1982.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. William R. Caine,* for appellant.

*Mr. Mark R. DeVan,* for appellee.

NAHRA, J. On January 9, 1981, two Cleveland Police officers put defendant's liquor store under surveillance. According to testimony, the officers observed a youth leaving the store carrying malt liquor. After ascertaining the youth to be under the legal age, the officers entered the store, identified themselves, and conducted a thorough search of the premises. While in the storage area, they spotted a sawed-off shotgun on top of a meat cooler. The testimony was in conflict as to whether the butt of the gun was in view. The defendant was subsequently indicted for unlawful possession of a dangerous ordnance in violation of R.C. 2923.17. Defendant filed a motion to suppress the fruits of the search. A hearing was held on July 20, 1981 and the trial judge granted the motion on August 3, 1981. From that motion this appeal follows.

The state's first assignment of error argues that the suspicion of criminal activity was sufficient to permit a warrantless search of a liquor store. The suspicion the state relies upon was generated by the alleged illegal sale to a minor. The minor was never produced and appellee's son testified the youth the police confronted him with at the scene was not the person to whom he had sold beer. Also used by the police to justify the warrantless search was a vague history of inchoate complaints. Such suspicion without more supposedly allows a general search of a member of a "pervasively regulated" industry. The state concedes

that normally a search warrant would be necessary for such a search. It claims, however, that appellee is not entitled to the application of the normal standard. Two reasons are given, both pernicious. First, when a liquor store owner chooses to enter such a pervasively regulated business, he impliedly consents to yield his Fourth Amendment rights. *Colonnade Catering Corp.* v. *United States* (1970), 397 U.S. 72, is cited. Second, once a person becomes a permit holder, his premises are no longer private, and the prohibition against warrantless searches is inapplicable. Here *Broadway Enterprise, Inc.* v. *Bd. of Liquor Control* (1964), 1 Ohio App. 2d 470 [30 O.O.2d 455], is cited.

The general rule for warrantless searches is stringent. It was stated in *Mincey* v. *Arizona* (1978), 437 U.S. 385, 390:

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.' *Katz* v. *United States* [1967], 389 U.S. 347, 357 * * *."

The state seeks to bring the instant case under the pervasively regulated business exception. But the fact that a business is closely regulated for one purpose does not entail strict regulation in every respect. The rule laid down in *Colonnade* is that in these cases, the general standard of reasonableness applies. *Id.* at 77. Here, no reason for a general search existed. The purported sale to an underaged buyer does not require, as a component of the investigation, a search of the premises. There is no relationship between the fruits of any such search and prosecution of a case of an illegal sale. Nor does the occurrence of past complaints against the defendant help. Such complaints were vague and inchoate, and were properly thought by the trial judge to be too obscure to justify a search.

The state's reliance on *Broadway* is misguided. There, a warrantless search of defendant's liquor stock was upheld. The police officers had acted on information that suggested that the defendant had been diluting his liquor, and were looking for evidence of diluting only. The search was necessary to establish whether the offense complained of had been committed, a factor not present here. Unfortunately, the court added an intemperate dictum, suggesting that the Fourth Amendment has no application in liquor store cases, a statement contrary to both the Constitution and Supreme Court interpretations. Reasonableness is always required. *See* v. *Seattle* (1967), 387 U.S. 541.

The case of *United States* v. *Biswell* (1972), 406 U.S. 311, provides a rationale for disallowing the present seizure. There a warrantless search of a gun store turned up an illegal firearm. The search was conducted pursuant to federal statute (Section 923[g], Title 18, U.S. Code). In upholding the search, the court emphasized that administrative searches were allowable in pervasively regulated industries in the "context of a regulatory inspection system of business premises that is carefully limited in time, place and scope * * *." 406 U.S., at 315. Such a system makes certain that "[t]he dealer is not left to wonder about the purposes of the inspector or the limits of his task." 406 U.S., at 316.

Sniezek could well wonder about the purpose of the instant search. The police officers claimed to be investigating the sale of liquor to a minor, yet they searched the non-public areas, the basement and on top of a meat cooler. They were not searching pursuant to any inspection scheme or procedure. Moreover, the state has failed to show that there existed an authorized inspection procedure for them to follow. The Supreme Court held in *Colonnade,* 397 U.S., at 77, that where the legislature has "made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply."

The state's second assignment of error states that any portion of a business premise licensed under the state liquor laws (R.C. Chapter 4301 *et seq.*) is subject to be searched. The argument following this assignment suggests that the search of the storage area of the store was a reasonable part of the total search. Because we find the search illegal *ab initio,* and because the legislature has failed to enact rules governing administrative searches, we cannot determine what the proper scope of such a search would have been, had it been legal.

Affirmed.

*Judgment affirmed.*

PRYATEL, C.J., and DAY, J., concur.